UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cv-00410-FDW

| | |
|---|---|
| TIFFANY MONIQUE BUCHOLTZ DAVIS, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ORDER ) |
| WELLS FARGO HOME MORTGAGE, a Division of Wells Fargo Bank, N.A. | ) ) ) ) |
| Defendant. | ) ) |

THIS MATTER is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim. (Doc. No. 10). Defendant, through counsel, seeks dismissal of Plaintiff's claims under Rule 12 of the Federal Rules of Civil Procedure. For the reasons which follow, Defendant's Motion (Doc. No. 10) is GRANTED and Plaintiff's claims are DISMISSED.

I. BACKGROUND

On February 14, 2006, Plaintiff, who is proceeding *pro se*, entered into a mortgage ("the Loan") with New Freedom Mortgage Corporation ("New Freedom") to purchase property in Charlotte, NC ("the Property"). (Doc. No. 10-1, p. 2). A deed of trust was filed with the Mecklenburg County Register of Deeds on March 13, 2006. (Doc. No. 10-2, pp. 2, 11). New Freedom assigned the Loan to Defendant, and a new deed of trust was filed on August 10, 2011. (Doc. No. 10-3, p. 2-3). The Loan was modified with the consent and signature of both parties, and the modified Loan was recorded on July 17, 2018. (Doc. No. 10-4, pp. 2, 10-11). On February 11, 2019, Plaintiff submitted a private banker negotiable security instrument ("the Note") to Defendant to repay the Loan. (Doc. No. 1, p. 4). Defendant's branch manager allegedly took the

1

Note on February 13, 2019, (Doc. No. 1, p. 32-33), but when Plaintiff attempted to make a payment under the Note, (Doc. No. 1, p. 34), Defendant did not accept payment. (Doc. No. 1, p. 17). Defendant instead began foreclosure proceedings on the Property in late March 2019 and received an order on September 24 from the Mecklenburg County Superior Court affirming the Clerk of Court's April 25 decision to allow a foreclosure sale. (Doc. No. 10-5, p. 2; Doc. No. 11, p. 3).

Plaintiff initiated these proceedings on August 21, 2019. (Doc. No. 1, p. 1). Defendant filed the pending motion to dismiss on October 18. (Doc. No. 10, p. 1). Plaintiff filed a Memorandum in Opposition on November 1 (Doc. No. 12, p. 1), and the Court issued a Roseboro notice[1] on November 5 granting Plaintiff leave to file an amended response and supporting documents by November 19. (Doc. No. 13, p. 4). On November 18, Plaintiff moved for an extension of time, (Doc. No. 15), which the Court granted. (Doc. No. 16). Plaintiff filed her amended response on November 27, 2019. (Doc. No. 17).

## II. STANDARD

### A. Rule 12(b)(1)

Lack of subject matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382 (1884). The court's ability to independently address subject matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject matter jurisdiction for the first time on

---

[1] Although the Fourth Circuit's discussion in Roseboro only requires notice in relation to summary judgement motions, see Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam) (requiring "that the plaintiff be advised of his right to file counter-affidavits or other responsive material and alerted to the fact that his failure to so respond might result in the entry of summary judgment against him"), courts routinely issue Roseboro notices for motions to dismiss, as the court did here.

appeal, thereby voiding the judgment.  Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804).  The Federal Rules of Civil Procedure anticipate this issue and provide that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

When a court considers its subject matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  In Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held:

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.  The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists.  The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.  A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to *de novo* appellate review.

Id., at 768-69 (citations omitted).

### B.  Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly,

3

550 U.S. at 556). While the Court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F. 3d 175, 180 (4th Cir. 2000). A court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Veney v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted).

Plaintiff's complaint alleges, in part, a claim of fraud. See (Doc. No. 1, p. 15-16). Under Rule 9(b) of the Federal Rules of Civil Procedure, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This standard "provide[s] defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation." McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559 (4th Cir. 2013). Said differently, a claim involving fraud will survive a motion to dismiss if (1) the defendant has been made aware of the circumstances, and (2) the plaintiff has "substantial prediscovery evidence of those facts." Id. (quotations omitted). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1297 (2d ed. 1990)). Additionally, "[m]ere allegations of fraud by hindsight will not satisfy the requirements of Rule 9(b)." Hillson Partners

4

Ltd. P'Ship v. Adage, Inc., 42 F.3d 204, 209 (4th Cir. 1994) (quotations omitted).

When examining a pleading from a pro se plaintiff, "however inartfully pleaded," the court is required to liberally construe the document and hold it to "less stringent standards than formal pleadings drafted by lawyers." Erikson v. Pardus, 551 U.S. 89, 94 (2007). This leniency does not relieve the plaintiff of "the burden of alleging sufficient facts" on which to base a claim. Pickens v. JP Morgan Chase Bank, N.A., No. 5:14-CV-00166-RLV-DSC, 2016 WL 2759726 at *3 (W.D.N.C. May 12, 2016).

### III. ANALYSIS

Plaintiff alleges seven causes of action: (1) Defendant has defaulted on the Loan by not producing the original "blue inked signed" mortgage contract to prove Plaintiff owes a lawful debt; (2) Defendant has defaulted on the Loan by not accepting the Note as payment; (3) Defendant has committed fraud upon the court by not producing the original mortgage contract and instead submitting a fraudulent one; (4) Defendant committed violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") by foreclosing on mortgaged homes; (5) Under the War Powers Act and Trading With the Enemy Act, Defendant has lost jurisdiction to collect on the Mortgage by refusing to accept Plaintiff's payments under the Note; (6) Defendant cannot collect the Mortgage because they never possessed the mortgage documents; and (7) Defendant has committed financial discrimination by not accepting the Note as legal tender. (Doc. No. 1, p. 14-18).

#### A. Undoing Foreclosure (Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1738)

"Federal courts have no general power to compel action by state courts. Nor do [they] have jurisdiction to review state court orders." In re Austin, 8 F. App'x 253, 254 (4th Cir. 2001) (per

curiam) (citations omitted); see also D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983) ("As we have noted . . . a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in this Court."). The Rooker-Feldman doctrine, therefore, stands for the proposition that final judgments entered in state court cannot be reviewed by any lower federal court—that is, any district or circuit court. E.g., Feldman, 460 U.S. at 482. Since the doctrine was articulated, however:

> the Supreme Court has repeatedly emphasized that the Rooker-Feldman doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

Hulsey v. Cisa, 947 F.3d 246, 250 (4th Cir. 2020) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). As the Supreme Court stated in Exxon, "[w]hen there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court." Exxon, 544 U.S. at 292. The definition of what constitutes a "state-court loser" or a "state-court judgment" has likewise narrowed over the years. Although the Fourth Circuit has not squarely addressed the issue, the Sixth Circuit has ruled on a similar issue, whether the doctrine applies to a writ of garnishment. Observing that a judgment is "when the court investigate[s], declare[s], and enforce[s] liabilities based on application of law to fact," the court held that a writ of garnishment is not a "judgment" because "[a] creditor may obtain one simply by filing a form with the [state] court clerk, who then issues the writ as long as the request appears to be correct." Van Hoven v. Buckles & Buckles, P.L.C., 947 F.3d 889, 892-93 (6th Cir. 2020) (alterations in the original and added) (quotations omitted). Because the court saw the writ of garnishment as a "ministerial," rather than a judicial action, it determined Rooker-Feldman cannot

apply to bar the action.[2] Id. at 893. The Fourth Circuit likewise echoed this notion in Hulsey v. Cisa, 947 F.3d 246 (4th Cir. 2020), in which it held that Rooker-Feldman did not apply where the plaintiff in federal court sought damages, disgorgement, and injunctive relief for allegations of RICO violations and fraud, among others. Id. at 250. As these claims were based primarily on the federal defendants' conduct while prosecuting the case in state court, rather than an "appeal" of the state court proceedings, Rooker-Feldman could not apply. Id. at 250-51.

To the extent Rooker-Feldman does not apply to parallel proceedings in state and federal court, "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." Exxon, 544 U.S. at 292. "The Full Faith and Credit Act, 28 U.S.C. § 1738, originally enacted in 1790 . . . requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" Id. at 293 (quoting Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523 (1986). In other words, once a legal issue has been litigated in state court, the state court ruling is not to be re-litigated in federal court; instead, the federal court is to give preclusive effect to the state court decision. See 28 U.S.C. § 1738. Of course, a different cause of action gives a plaintiff a separate claim in federal court, even if it leads to a different legal conclusion than the one reached in state court. See Exxon, 544 U.S. at 293.

"Under North Carolina law, the doctrine of res judicata applies to bar re-litigation of 'every point which properly belonged to the subject in litigation and which the parties, [e]xercising

---

[2] The Sixth Circuit, in describing the process by which a creditor can obtain post-judgment garnishment, explained the rules in Michigan "offer a simplified post-judgment garnishment procedure. To collect, the creditor gives the court clerk a verified statement that describes the debt and the parties. If everything appears to be correct, the clerk issues a writ of garnishment and the creditor serves it on a third party, the garnishee." Van Hoven, 947 F.3d at 891 (quotations and citations omitted). Absent an objection, that is the extent of the process. Id. Instead of objecting to the garnishment, the plaintiff filed a class action suit in federal court. Id.

7

reasonable diligence, might have brought forward . . . .'" Robinson v. Deutsche Bank Nat'l Trust Co., No. 5:12-CV-590-F, 2013 WL 1452933, at *7 (E.D.N.C. Apr. 9, 2013) (alterations in original) (quoting Painter v. Ballenger, 217 S.E.2d 650, 655 (N.C. 1975)). In Robinson, the Eastern District faced a similar problem before this court, namely a plaintiff that sought to undo a foreclosure in state court by filing after foreclosure proceedings commenced.[3] Id. at *2-3. After reviewing Rooker-Feldman, the court noted the doctrine could not apply because under state statute, foreclosure orders "issued by clerks in North Carolina merely authorize or permit a trustee to conduct a foreclosure sale; the order does not compel the trustee to do so." Id. at *6; see also N.C. Gen. Stat. § 45-21.16(d). On the issue of foreclosure, the court noted under North Carolina law, during a foreclosure hearing, the clerk of court must decide four issues: the existence of a valid debt; the existence of a default; the trustee's right to foreclose; and the adequacy of notice to record owners. Id. at *7 (citing and quoting Merrill Lynch Bus. Fin. Servs., Inc. v. Cobb, No. 5:07-cv-129-D, 2008 WL 6155804, at *3-4 (E.D.N.C. Mar. 18, 2008). Because the plaintiff's "state-law claims in no way challenge any of the findings made by the clerk of court, nor could the allegations be raised on appeal from the clerk's order to a superior court judge," the Robinson court concluded the plaintiff was not precluded from raising those issues in the federal litigation. Id. at *8. Other courts, considering similar issues, have held that failure "to present evidence concerning the validity of [debt] . . . at the foreclosure hearings" means a federal court should give preclusive effect to a state court's judgment. Merrill Lynch Bus. Fin. Servs., 2008 WL 6155804, at *4; see also SunTrust Mortg. Inc. v. Busby, 469 F. App'x 205, 206-07 (4th Cir. 2012) (per curiam) (holding the district court properly found defenses to foreclosure barred by res judicata where the

---

[3] The plaintiff originally filed the Complaint in state court, which was removed to federal court. Robinson, 2013 WL 1452933, at *1.

plaintiff could have raised equitable defenses to foreclosure or filed a separate proceeding to enjoin foreclosure in state court). In other words, "[t]o permit challenges to the validity of the default outside this framework [N.C. Gen. Stat. §§ 45-21.16, 45-21.34] would defeat the legislative intent behind the North Carolina statutory scheme," and therefore claims disputing the underlying debt must be brought before state court. SunTrust Mortg., 469 F. App'x at 207.

Plaintiff's first, second, fifth, sixth, and seventh claims are all attempts to have the Court review the foreclosure decision by the Superior Court of Mecklenburg County by attacking the validity of the Note, which in effect is a collateral attack on the state court's judgment on the existence and validity of a debt. To the extent that the Clerk of Superior Court of Mecklenburg County's decision to allow foreclosure constitutes a "judgment," which was subsequently appealed to the Superior Court (and pending when this case was filed), then Rooker-Feldman governs this case and deprives the Court of jurisdiction. If, on the other hand, the Clerk of Court's decision was not a "judgment," Rooker-Feldman does not apply, but preclusion prevents the Court from deciding issues related to the validity of the Note or state court foreclosure proceedings. Importantly, the Court does not seek to determine whether the Clerk's decision was a "judgment" under the Rooker-Feldman framework, as the outcome remains the same regardless of whether Rooker-Feldman or preclusion governs.

Arguments related to the validity of the Note and Defendant's obligation to accept payment under the Note should have been put forward by Plaintiff during the foreclosure proceedings, a separate proceeding to enjoin foreclosure, or on appeal. As the Court is unable to review such judgments coming from state court, see SunTrust Mortg., 469 F. App'x at 207; Merrill Lynch Bus. Fin. Servs., 2008 WL 6155804, at *3-4, it is unable to grant Plaintiff relief on her claims. Thus,

Plaintiff's first, second, fifth, sixth, and seventh claims are properly dismissed. As Plaintiff's claims regarding fraud and RICO violations do not appear to be related to the dispute of the underlying debt or otherwise argued before state court, see Hulsey, 947 F.3d at 250-52, the Court now addresses Plaintiff's third and fourth claims.

### B. Fraud (Fed. R. Civ. P. 12(b)(6))

Claims of fraud or mistake require a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fourth Circuit has held, at minimum, such pleadings must include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." United States ex rel. Grant v. United Airlines Inc., 912 F.3d 190, 197 (4th Cir. 2018) (quoting United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)).

Plaintiff's third claim does not meet this standard, even accounting for the grace given to pro se plaintiffs. Plaintiff asserts that Defendant filed a counterfeit copy of the Mortgage Debt Lien Contract Security but fails to say what about it has been changed or is fraudulent. Plaintiff makes offhand references to "redaction" which has caused the copies to be fraudulent, (Doc. No. 1, p. 15), but does not say which redaction is improper, what should be in its place, or how it has changed the meaning of the documents. Plaintiff does not indicate when this happened, or what Defendants have gained by this fraud. Because Plaintiff's pleadings do not meet the heightened pleading requirements for claims of fraud, Plaintiff's third claim is dismissed due to Plaintiff's failure to state a claim upon which relief can be granted.

### C. RICO (Fed. R. Civ. P. 12(b)(6))

Plaintiff's fourth claim alleges "[Defendant] may have been engaged in Civil Rights

Violations with RICO Conspiracy and Racketeering as a Street Gang since the 1994 Securitization of mortgages . . . ." (Doc. No. 1, p. 16). A RICO claim has four elements: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. Whitney, Bradley & Brown, Inc. v. Kammermann, 436 F. App'x 257, 258 (4th Cir. 2011) (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)).

Plaintiff has not alleged these elements. Her allegations of a RICO violation consist mostly of what appears to be accusations of conspiracy against the court system and lawyers. (Doc. No. 1, p 16-17) ("The ATTORNEY JUDGES just take Bank ATTORNEY'S word that debt exists . . . as their Gospel Truth . . . ."). The parts that are on topic are allegations that Wells Fargo forecloses on homes "without risking a penny." (Doc. No. 1, p. 16). While the court acknowledges that foreclosures are unfortunate for those involved, it is not an act of racketeering when a bank forecloses on a home. Even assuming, *arguendo*, this one specific instance of foreclosure in some way constitutes racketeering, Plaintiff still fails to allege a *pattern* of such acts, as required under Kammermann. See generally (Doc. No. 1). Because Plaintiff fails to allege facts which would allow relief, Plaintiff's fourth claim is dismissed due to Plaintiff's failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion (Doc. No. 10) is GRANTED, and Plaintiff's claims are DISMISSED. The Clerk of Court is respectfully DIRECTED to mail a copy of this order to Plaintiff at her address of record.

IT IS SO ORDERED.

Signed: February 24, 2020

Frank D. Whitney
Chief United States District Judge